UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PHILIP FRANK | CIVIL ACTION |
| VERSUS | NO: 12-0559 |
| ZIMMER, INC. and ZIMMER US, INC. | SECTION: "A" (5) |

**ORDER AND REASONS**

Before the Court is a **Motion For Summary Judgment (Rec. Doc. 60)** filed by Defendants Zimmer, Inc. and Zimmer US, Inc. Plaintiff Philip Frank opposes the motion. The motion, scheduled for submission on July 17, 2013, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **DENIED**.

**I. BACKGROUND**

This matter arises as a result of a products liability action brought by Plaintiff Philip Frank against Defendants Zimmer, Inc. and Zimmer US, Inc., the manufacturers of certain medical components that were implanted in Plaintiff on November 28, 2007. On that date, Plaintiff underwent a total hip replacement procedure on his left side, performed by Dr. Chad Millet.

Two years later, in December 2009, Plaintiff began experiencing significant pain in his left leg. Plaintiff sought the assistance of several doctors to help determine the cause of this pain.[1]

On December 23, 2009, Plaintiff visited Dr. Terry Habig, one of Dr. Millet's partners. After taking x-rays, Dr. Habig found nothing wrong and prescribed Plaintiff pain medication and muscle relaxants.

On February 11, 2010, Plaintiff visited Dr. Millet, who had performed his hip replacement

---

[1] *See* Rec. Doc. 96-1, Plaintiff's Opposition, Exh. A. (Affidavit of Philip Frank).

1

procedure. Dr. Millet reviewed the x-rays his partner had taken and prescribed Plaintiff physical therapy for strengthening, which Plaintiff completed.

On August 26, 2010, Plaintiff returned to Dr. Millet. After taking more x-rays, Dr. Millet informed Plaintiff that the problems he was experiencing could be due to his back. Dr. Millet sent Plaintiff to see Dr. Andrew Todd, a back specialist in the office.

On September 1, 2010, Dr. Todd did an MRI on Plaintiff's spine. Dr. Todd informed Plaintiff that in his opinion, the pain and weakness were not related to Plaintiff's back.

On October 8, 2010, Plaintiff saw Dr. Rick Meyer, an orthopedist. Dr. Meyer took x-rays and performed an MRI. Dr. Meyer told Plaintiff that he did not see a problem with Plaintiff's hip. He suggested that Plaintiff have a spinal procedure to determine if his back was the cause of the pain he was experiencing.

On December 13, 2010, Plaintiff contacted Zimmer's Joint Replacement Help Line by calling a telephone number he had seen in *USA Today*. Plaintiff had a conversation with a customer representative, during which he described the problems he had been experiencing.[2] He told the representative that while he knew the device he received had not been recalled, he was calling to see if he could get some guidance. The representative suggested that Plaintiff seek other opinions on the problems he was experiencing. She also offered to do a Product Experience Report. She subsequently sent Plaintiff an email, informing him of the different documents he would need to gather from his doctors for the report. Plaintiff never submitted the documents required for the report.

---

[2]*See* Rec. Doc. 60-5, Defendants' Motion, Transcript (Transcription of phone conversation between Zimmer Joint Replacement Help Line and Philip Frank).

On December 23, 2010, Plaintiff saw another orthopedic surgeon, Dr. Jose Rodriguez.  Dr. Rodriguez was unable to determine the cause of Plaintiff's problems, but recommended letting him re-operate on the problematic hip.

On March 7, 2011, Dr. Rodriguez performed surgery on Plaintiff's hip.  After surgery, Dr. Rodriguez informed Plaintiff that he had found a significant amount of corrosion on and around the Zimmer components.  Further, Dr. Rodriguez informed Plaintiff that this corrosion was likely the cause of the pain he had been experiencing.

On March 1, 2012, Plaintiff filed the instant complaint against Defendants, seeking recovery for physical and mental pain suffered, disability, and significant economic losses.[3]  Defendants subsequently filed this motion for summary judgment arguing that Plaintiff's claims are prescribed under Louisiana law.[4]  Specifically, Defendants argue that Plaintiff had sufficient knowledge of a potential claim against Defendants more than one year before filing this lawsuit.

A jury trial in this matter is scheduled to commence on May 5, 2014.

**II. DISCUSSION**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."[5]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury

---

[3] Rec. Doc. 1, Complaint.

[4] Rec. Doc. 60, Motion for Summary Judgment.

[5] *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

could return a verdict for the non-moving party.[6]  The court must draw all justifiable inferences in favor of the non-moving party.[7]  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause,"[8] the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.[9]  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.[10]

Defendants argue that Plaintiff was on notice of a potential claim at least as of the time when he called the Zimmer customer service line on December 13, 2010.  According to Defendants, this knowledge was sufficient to begin tolling of the one-year prescriptive period applicable to this products liability action.  Since Plaintiff filed his lawsuit fifteen months after the call took place, Defendants urge the Court to grant summary judgment on the issue of prescription.

Under Louisiana law, delictual and product liability actions are subject to a liberative prescription of one year.[11]  Prescription begins to run from the day injury or damage is sustained.[12] Damage is considered to have been sustained for purposes of prescription only when

---

[6]*Id.* (*citing Anderson*, 477 U.S. at 248).

[7]*Id.* (*citing Anderson*, 477 U.S. at 255).

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[9]*Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[10]*Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

[11]La. Civ. Code art. 3492; *Bultman v. Danek Medical, Inc.*, No 96-3447, 1999 WL 33537321, at *3 (E.D. La. Dec. 17, 1999).

[12]*Id.* art. 3492.

it has manifested itself with sufficient certainty to support accrual of a cause of action.[13]

The doctrine of *contra non valentem agere nulla currit praescriptio* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff.[14] Prescription does not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong.[15] The precise point in time when prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.[16] Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage.[17] The question is whether the plaintiff was reasonable to delay in filing suit in light of his own information and the diagnosis he received.[18]

Defendants' motion for summary judgment on the issue of prescription relies heavily on their argument that Plaintiff had constructive knowledge of his cause of action more than one year prior to filing suit. Louisiana courts have stated that "[t]he heart of the inquiry into constructive knowledge is the reasonableness of plaintiff's inaction."[19]

The Court finds that a genuine issue of material fact exists as to whether Plaintiff was

---

[13] *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (July 1, 1993) (*citing McCray v. New England Ins. Co.*, 579 So. 2d 1156 (La. App. 2d Cir. 1991)).

[14] *Id.* at 1156.

[15] *Id.* at 1157 (*quoting Jordan v. Employee Trans. Corp.*, 509 So. 2d 420, 423 (La. 1987)).

[16] *Id.*

[17] *Id.*

[18] *Id.* (*citing Knaps v. B & B Chem. Co.*, 828 F.2d 1138, 1140 (5th Cir. 1987)).

[19] *Nat'l Council on Comp. Ins. v. Quixx Temp. Servs., Inc.*, 95-0725 (La. App. 4 Cir. 11/16/95), 665 So. 2d 120, 124 (*citing Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423-24 (La. 1987)).

reasonable in waiting until March 1, 2012, to file suit.  Plaintiff denies that he had sufficient information to connect the pain he was experiencing to the Zimmer components until his re-operation on March 7, 2011, after which Dr. Rodriguez informed him of corrosion surrounding the components.[20]  Plaintiff maintains that until this time, he had no reason to believe anything was wrong with the Zimmer components which would have allowed him to state a cause of action against Defendants.

A factfinder may determine that Plaintiff in this case did not act unreasonably by not bringing any action against Defendants prior to March 1, 2012.  Plaintiff saw several doctors during the span of December 2009 to December 2010, none of whom indicated to him that the Zimmer components were functioning improperly.  Consequently, Plaintiff may be found to have acted reasonably in relying upon the judgment of these professionals, which lead to the delay in filing suit.

Accordingly, and for the forgoing reasons;

**IT IS ORDERED** that the **Motion For Summary Judgment (Rec. Doc. 60)** filed by Defendants Zimmer, Inc. and Zimmer US, Inc. is **DENIED**.

October 10, 2013

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[20]Rec. Doc. 1, Complaint, ¶ 11-12.